IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN A. DALEY,                          :
                                         :          CIVIL ACTION
                    Plaintiff,           :
          v.                             :          NO. 02-CV-2629
                                         :
                                         :
GRANADA US PRODUCTIONS, et al.,          :          JURY TRIAL DEMANDED
                                         :
                    Defendants.          :


**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

Plaintiff Brian A. Daley spends the bulk of his opposition to Defendants' Motion for

Judgment on the Pleadings creating excuses to prevent the Court from reviewing the two works

at issue in this copyright infringement case and making the required threshold determination

whether the copyrightable elements are substantially similar as a matter of law. In arguing that

substantial similarity cannot be decided without expert reports and without discovery concerning

whether defendants had access to plaintiff's work, plaintiff seeks to induce the Court to sidestep

a threshold legal issue that could dispose of the entire case. Instead, plaintiff asks the Court to

require burdensome discovery, including expensive depositions of witnesses scattered all over

the country, on matters that are irrelevant to the threshold legal issue the Court must decide.

Further discovery simply will not assist plaintiff in meeting his burden of proving that the

works are substantially similar. The works speak for themselves, and a cursory review of them –

which would take no more than three hours – is all that is needed to determine that plaintiff

cannot carry his burden. Neither expert opinions nor arguments by counsel can change the

works themselves or create similarities that do not exist. Plaintiff's efforts to distract the Court

with extraneous issues serve only to prove the point.

Even when, late in his brief, plaintiff grudgingly turns to comparing the two works, his

alleged similarities remain general and conceptual and thus non-actionable. The idea of Robin

Hood's daughter sharing the characteristics of Robin Hood as she steals from the rich to give to

the poor or battles villains vying for England's throne obviously derives from the Robin Hood

legend and is not copyrightable. Nor is the concept of Robin Hood's adolescent daughter

arguing with her father as she attempts to earn his respect, or disguising herself as a man as she

attempts to thwart sexist stereotypes. Beyond these general themes, the works are vastly

different, with unique characters, scenes, plot sequence, dialogue and tone. Accordingly,

plaintiff cannot, as a matter of law, prove that *Princess of Thieves* and *sHerwood* are

substantially similar, and plaintiff's claim must be dismissed.

## II.    ARGUMENT

### A.    Expert Testimony Is Not Required Under the Substantial Similarity Standard.

Contrary to plaintiff's contention, the law is clear that expert testimony is *not* required for

a Court to conduct its independent evaluation as to whether two works are substantially similar.[1]

---

[1] Even the cases on which plaintiff relies do not support his argument that expert testimony is required – as opposed to permitted. *See Universal Athletic Sales Co. v. Salkland*, 511 F.2d 904, 907 (3d Cir. 1975) (finding expert testimony may be proper by relying on *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946), which held that expert testimony "may be received" to evaluate the existence of copying). Plaintiff has cited no published opinion holding that expert testimony is ever required. *Chiate v. Morris*, 972 F.2d 1337 (9th Cir. 1992), cited on page 6 of Plaintiff's Brief, is unpublished and has no precedential value.

The Court of Appeals for the Third Circuit has held only that, in certain circumstances, expert testimony "may be received" by the Court. *See Dam Things From Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002) (holding that "the opinions of experts *may be* called upon in determining whether there is sufficient similarity between the works") (emphasis added). Thus, when a court can determine from its independent review that the works are not substantially similar as a matter of law, it needs no expert testimony, and it can and should dismiss plaintiff's claim.

In fact, courts have rejected expert testimony where, based on their own independent review of the works, the courts have found that expert testimony will not create a triable issue of fact as to substantial similarity because no similarity exists. *See O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685 (1st Cir. 1980) (holding that plaintiff's proposed expert testimony could not create a triable issue of fact that would survive summary judgment); *Costello v. Loew's Incorporated*, 159 F. Supp. 782, 789 (D.D.C. 1958) (granting summary judgment because no amount of "expert or lay" testimony as to "fancied similarities" would change the "obvious content" of the motion pictures about King Arthur that the court reviewed). It is clear, therefore, that plaintiff cannot rely on his own expert's testimony to create similarities that are not present in the works themselves. *See, e.g., O'Neill*, 630 F.2d at 685 ("It is difficult to understand how additional evidence, whatever it might be, could change the written words of the two novels. Nor can the testimony of an expert provide what is clearly lacking.").

Indeed, some courts have declined to consider expert testimony in recognition that it only serves to prolong discovery and lengthen the record unnecessarily. *See, e.g., Nichols v. Universal Pictures Corporation*, 45 F.2d 119, 123 (2d Cir. 1930) (holding that expert testimony

"cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal"); *Little v. Twentieth Century Fox Film Corp.*, 1995 U.S. Dist. LEXIS 9340, at *12 (S.D.N.Y. 1995) ("Customarily, courts resolve the question [of substantial similarity] 'primarily through detailed viewing or reading of the works themselves.'").

Although expert testimony is not required in this case, to the extent the Court believes that an expert opinion may be helpful in its evaluation, defendants submit the expert report of Robert A. Gorman, Kenneth W. Gemmill Professor of Law at the University of Pennsylvania Law School. *See* Expert Report of Robert A. Gorman ("Gorman Report"), attached as Exhibit A. Professor Gorman, who has taught copyright law for 37 years, authored a copyright casebook, published numerous articles, and lectured extensively on copyright law, has analyzed the scripts and videos of both *Princess of Thieves* and *sHerwood*. *See* Gorman Report at 1. By identifying the non-copyrightable elements in the two works, and analyzing the remaining elements, Professor Gorman concluded that any similarity between the two works derives from generic, non-copyrightable concepts, which do not constitute copyright infringement. *Id.* at 5. Further, Professor Gorman concludes that the character of Robin Hood's daughter is "properly understood as a character 'idea'" that is expressed differently in the characters of Robyn and Gwyn. *Id.* at 4.

Consequently, because the Court may now consider defendants' expert report in conjunction with the works themselves, this case is ripe for a decision as a matter of law on the issue of substantial similarity. Because the works are not substantially similar, the Court should grant defendants' motion for judgment on the pleadings.

**B.    Plaintiff's Expert Report Should Be Disregarded Because It Applies An Incorrect Legal Standard.**

Plaintiff relies on an expert report from Bryan Scott of Picture This Television, LLC. ("Scott Report," attached as Exhibit A to Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Plaintiff's Brief")). Mr. Scott, a producer of television game shows, is not qualified to opine on copyright infringement of a dramatic work, as demonstrated by his wholly conclusory opinion. Accordingly, his report is not entitled to any weight and should be disregarded.

Mr. Scott is not qualified to opine on copyright infringement because, as proved by his report, he is entirely unfamiliar with the scope of copyright protection under the law. His only opinion about the substantial similarity of the works is that the "*concepts*" of the two works are substantially similar. *See* Scott Report at 1. As demonstrated in defendants' initial brief, and acknowledged by plaintiff in his own brief, *concepts* indisputably are not protected by copyright law. Because Mr. Scott misunderstands copyright law and what elements may be subject to copyright protection, he is not qualified to opine on the issue of substantial similarity.

Moreover, Mr. Scott's report would not withstand scrutiny under Federal Rule of Evidence 702 or the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). He has provided absolutely no basis for his opinion, as his report is completely devoid of any analysis or facts. He does not refer to a single alleged similarity in the two works, and rests his opinion solely on his view that they contain similar "concepts." Accordingly, Mr. Scott's opinion will not assist the trier of fact or the Court and should not be considered in the Court's determination of substantial similarity.

C.    **Access Is Irrelevant Where No Similarities Exist Between the Works.**

Plaintiff mischaracterizes the access element of a copyright infringement claim in an

attempt to avoid a ruling on substantial similarity and open the door to protracted and expensive

discovery. This attempt must fail because plaintiff must prove *both* access and substantial

similarity to proceed on his claim. *See Williams v. Michael Crichton et al.,* 84 F.3d 581 (2d Cir.

1996). As plaintiff himself cites, "No amount of proof of access will suffice to show copying if

there are no similarities." *See* Plaintiff's Brief at 12 (citing *Sid & Marty Kroft Television Prods.*

*Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1163 (9th Cir. 1977)). Because there are no

similarities between *Princess of Thieves* and *sHerwood* in copyrightable elements, access is

irrelevant.[2]

Further, despite plaintiff's argument that clear and convincing evidence of access lessens

his burden of proof as to similarity, not all courts apply this "Inverse Ratio Rule." Indeed, the

quotation that plaintiff cites explicitly states that the rule has "limited validity." *See* Plaintiff's

Brief at 13. In fact, another court in the Ninth Circuit held that the rule was inapplicable

precisely because the court found that "there exists no substantial similarity of protectable

expression" and "no amount of proof of access will suffice to show copying if there are no

similarities." *See Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 902 (9th Cir. 1987) (citing 3 M.

Nimmer, *The Law of Copyright* § 13.03[D] (stating that "clear and convincing evidence of access

---

[2] In fact, in the cases upon which plaintiff relies, the moving party routinely concedes access for purposes of the dispositive motion. *See, e.g., Walker v. Time Life Films, Inc.,* 784 F.2d 44 (2d Cir. 1986). Similarly, for purposes of this motion only, defendants do not dispute the access element to plaintiff's claim. Thus, there can be no need for discovery on access to decide the motion.

will not avoid the necessity of also proving substantial similarity since access without similarity cannot create an inference of copying")).

Accordingly, to prove copyright infringement, plaintiff must prove that the two works are substantially similar, regardless of whether or not defendants had access to his work. A review of the works themselves, supplemented by the expert report of Professor Gorman, establishes that *Princess of Thieves* and *sHerwood* are not substantially similar in any protectable elements of expression.

### D.    The Character of Robin Hood's Daughter Is Not Plaintiff's Unique Creation.

The core of plaintiff's copyright claim is his erroneous assertion that a character identified as a daughter of Robin Hood is his unique creation. Plaintiff goes so far as to assert that it is "undisputed that the fictional character of the *daughter* of Robin Hood did not exist until Plaintiff's published work." *Id.* at 2. Plaintiff is simply wrong. He further compounds his error by asserting that character traits that he obviously borrowed from the Robin Hood legend – such as skill in archery and fighting against an unjust ruler – can be covered by his copyright. Under the law, however, neither the concept of Robin Hood's daughter nor character and plot elements borrowed from the legend can be covered by plaintiff's copyright for *sHerwood*.

In addition to being wrong on the law, plaintiff is wrong on the facts. As defendants noted in their initial brief, a 1959 film entitled *Son of Robin Hood* featured a daughter of Robin Hood as its heroine more than 30 years before plaintiff claims to have originated the concept. *See* Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Defendants' Brief") at 13 n. 4. This film has been the subject of a registered copyright since

1959. *See* Exhibit B. The Court can take judicial notice of this copyrighted work. *See* Fed. R. Evid. 201(b).[3]

Plaintiff focuses on the title of the film – as opposed to the film's content – and summarily dismisses this proof that the concept of Robin Hood's daughter was not his unique creation.[4]  Had plaintiff watched the film, however, he would have seen that the heroine of that film was Deering Hood, Robin Hood's *daughter*, and that her adventure, like the works at issue in this case, is culled from the Robin Hood legend and includes many of the same elements and concepts that plaintiff now claims to own. *See* videotape of *Son of Robin Hood*, attached as Exhibit C.

As in any typical Robin Hood tale, in *Son of Robin Hood*, an evil villain, the Regent, terrorizes the English countryside.  In this story, Robin Hood has been dead for ten years, and the Merry Men, including Little John and Will Scarlett, have been unsuccessful in their attempts to counter the Regent's tyranny.  Acknowledging their need for a leader, they decide to call for Deering Hood, whom they believe to be Robin Hood's son.

---

[3] Fed. R. Evid. 201(b) provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably called in question.

Moreover, a court may properly take judicial notice of information obtained from an Internet website. *McLaughlin v. Volkswagen of Am., Inc.,* Civ. No. 00-3295, 2000 U.S. Dist. LEXIS 17505, at *10 (E.D. Pa. Dec. 6, 2000).

[4] This issue is certainly not "undisputed," as defendants' reference to *Son of Robin Hood* in their initial brief makes clear.

When Deering responds to the call of the Merry Men – like Robyn in *sHerwood* and Gwyn in *Princess of Thieves* – she is dressed as a man. Moreover, before Deering even meets Little John. she engages in a sword fight with the Regent's men to aid Sir James, the man who eventually becomes her love interest. When Little John learns that Deering is a woman, he suggests that Sir James pretend to be Robin Hood's son while Deering disguises herself as his squire. Little John justifies the disguise by saying: "Men will never rally behind a girl." While Deering is determined and confident in her ability to lead the Merry Men against the Regent, she reluctantly agrees to the sham.

During a feast celebrating the arrival of the "fake" son of Robin Hood, the alarm sounds and the Regent's men approach. One guard climbs a tree to act as a look-out, and both Little John and Sir James comment that they cannot shoot the guard because an arrow won't reach him. Contesting this, Deering Hood stands, readies her bow, and shoots the man in the heart and kills him. The men, clearly surprised, comment on Deering's skill as follows:

> Little John: "Why, you are your father's equal!"
>
> Sir James: "That's a shot worthy of any man."
>
> Deering Hood: "But it took a woman to do it."

Realizing that the best way to defeat the Regent was to infiltrate the castle, Sir James decides to pose as a Marquis with whom the Regent seeks an alliance. Deering agrees to pose as the Marquis' wife. Although she trades her tights for a dress to play the part of the lady, she later transforms back into Robin Hood's daughter, changing back into a man's tights and cape, and engages in several battles where she demonstrates her skill with the bow and arrow. Ultimately, Deering saves both Sir James and Little John with her good shot. The story ends with the Merry Men accepting Deering as Robin Hood's daughter and with the imminent marriage of Deering and Sir James, who have fallen in love.

You can't judge a book by its cover, nor a film by its title. The content of *Son of Robin Hood* proves irrefutably that the concept of a daughter of Robin Hood – who dresses as a man, overcomes gender stereotypes, is skilled in archery, opposes an unjust ruler and generally embodies the characteristics of Robin Hood – dates back *to at least 1959*. Plaintiff's contention that Robin Hood's daughter is his original and unique creation and that these character elements are copyrightable is simply wrong. Plaintiff's copyright on *sHerwood* cannot confer rights in characters, themes and dramatic elements that were in existence in a prior copyrighted work.

### E.    The Similarities Upon Which Plaintiff Relies Are Non-Copyrightable Concepts and *Scenes a Faire.*

In his brief, plaintiff juxtaposes very different scenes, dialogue and character attributes in an effort to create similarities out of non-copyrightable concepts and *scenes a faire* inherent to any Robin Hood legend or coming of age story. No matter how plaintiff tries to characterize the works, however, he cannot escape the obvious fact that the two works are very different and the only similarities are general concepts and *scenes a faire* that are not covered by his copyright.

#### 1.    The Character of Robin Hood's Daughter Derives From The Robin Hood Legend.

As demonstrated above, plaintiff's argument that the *scenes a faire* doctrine is inapplicable to the "expression of Robin Hood's daughter" rests on the erroneous assumption that Robyn, the *sHerwood* embodiment of Robin Hood's daughter, is unique and original. Although plaintiff tries to characterize Robyn's traits as an independent, unique expression of a Robin Hood character, it is clear that the very traits plaintiff cites are those that naturally flow from the Robin Hood legend, as demonstrated by the same traits in Deering Hood, heroine of *Son of Robin Hood.*

Plaintiff cites to three points of alleged similarity of expression between the two daughters, Robyn in *sHerwood* and Gwyn in *Princess of Thieves*: (a) their archery skills; (b) their kindness to the poor; and (c) their battles with villains. *See* Plaintiff's Brief at 9.[5] It defies belief that plaintiff could claim that these characteristics are derived from "the original creation of a new and uniquely developed character" when they so obviously are derived from the Robin Hood legend. It was Robin Hood who possessed the archery skills, as well as the social conscience that drove him to protect and feed the poor and to fight the tyrannical, money-hungry English rulers. These attributes are not new (indeed, they were all in *Son of Robin Hood* in 1959!) and are not protectible by copyright.

### 2. The Daughters' Romantic Interests, Which Are Inherent To Any Coming of Age Story, Are Expressed Entirely Differently in the Two Works.

Without explanation, plaintiff argues that the existence of romantic interest in both works demonstrates substantial similarity. Falling in love, however, is a common literary theme inherent to any coming of age story and thus is not a copyrightable element.

Moreover, the similarities plaintiff points to in the romantic interaction between Robin Hood's daughter and her romantic interest in the two works are based on the Robin Hood legend and cannot be protected by copyright. While it is true that both romantic relationships included disguise, an archery contest and an ultimate expression of love, these are all plot elements

---

[5] Inexplicably, plaintiff again states that defendants "admit that the character of the daughter of Robin Hood are the same in both works." Defendants made no such admission. To the contrary, defendants describe the personalities, backgrounds, and motivations of the two women as "entirely different." *See* Defendants' Brief at 19. Further, plaintiff incorrectly represents that both Robyn and Gwyn win an archery contest by splitting a competitor's arrow, *see* Plaintiff's Brief at 9, when, in fact, Robyn never splits a competitor's arrow in *sHerwood*. *See* Defendants' Brief at 27.

present in virtually all variations of the story of Robin Hood. In fact, these same elements are all present in the romantic relationship between Deering Hood and Sir James in *Son of Robin Hood*. Plaintiff cannot claim copyright protection in *scenes a faire* from the Robin Hood legend and *scenes a faire* of a coming of age story.

Beyond these similarities that are inherent in all coming of age stories or drawn from the Robin Hood legend, the expressions of the romantic relationships are extremely different. As demonstrated in Defendants' Brief, the daughters' romantic relationships are with different – and dissimilar – characters. In *sHerwood* Robyn is romantically involved with Junior, one of Robin Hood's Merry Men; in *Princess of Thieves* Gwyn's love interest is Prince Philip, the heir to England's throne. Junior's primary function in *sHerwood* is his romantic relationship with Robyn, and he does not develop in any way as the story progresses; Philip, to the contrary, develops – with inspiration from Gwyn – from a cowardly individual to a courageous leader, and his growth is an essential plot element in *Princess of Thieves*. Moreover, the romantic plots are expressed differently in the two works because of the inclusion in *Princess of Thieves* of Froederick, an additional character unique to the film, whose love for Gwyn and jealousy of Philip creates a love triangle. Finally, the romantic plots end differently: in *sHerwood,* Robyn and Junior end up as a romantic couple after Robyn magically brings Junior back to life, while, in stark contrast, the conclusion of *Princess of Thieves* finds Gwyn and Philip as no more than subject and king.

### 3.    Father-daughter Relationships Are Generic *Scenes a Faire.*

Notwithstanding plaintiff's unsupported argument to the contrary, a generic father-daughter relationship is not protected by federal copyright law. The theme of an over-protective father who is unwilling to let his daughter spread her wings as she enters adulthood is a common struggle in any coming of age story. These stories typically involve the daughter's attempts to

-12-

counter the control her father seeks to wield over her and the daughter's need to prove herself

equal to a man to win her father's respect. The conflict between father and daughter, the

daughter's rebellion, the daughter's success or failure, and the father's acceptance and

acknowledgment of his daughter as a woman and adult are *scenes a faire* common to any coming

of age story. These general themes are universal and timeless and clearly are not protected under

copyright law.

Similarly, the dialogue to which plaintiff points between the Robin Hoods and their

daughters in the two works are similar only on this most general level. Putting aside that the

words uttered by the characters are not the same, and that two of the dialogues plaintiff cites

arise in different contexts in the works,[6] the dialogues relate only to the universal theme of a

father at first holding his daughter back, because she is a girl and because she is his daughter, and

ultimately accepting her as an independent adult. The dialogue is not evidence of substantial

similarity.

#### 4.    The Scenes And Sequence Of Events Are Entirely Different In The Two Works.

Plaintiff argues that the opening scenes and sequence of events demonstrate substantial

similarity. Even a cursory review of the two works by this Court will show that this allegation is

simply not true.

Plaintiff wrongly characterizes as an "undisputed" fact that "both works open with the

teenage daughter of Robin Hood getting dressed in her bedroom." *See* Plaintiff's Brief at 19. In

---

[6] In what plaintiff characterizes as the final scenes, *see* Plaintiff's Brief at 17, where both fathers recognize their daughters' skill and character, the Robin Hood of *Princess of Thieves* embraces Gwyn as an equal partner after she has proven her archery skills, bravery, and dedication to his cause. In contrast, the Robin Hood of *sHerwood* accepts his daughter after she saves him but before the ultimate battle scene and in any event does not take her on as a partner since he announces he is "retiring" from his job to spend time with Marian.

fact, *Princess of Thieves* opens with the birth of Gwyn, a discussion in the castle by Cardaggian and the Sherriff regarding Gwyn's birth, and the death of Marion. *See* Defendants' Brief at Ex. A. In contrast, *sHerwood* opens with Robyn singing while getting dressed in her bedroom, followed by a scene introducing Margaret the witch and her three vixens. While the *fourth* scene in *Princess of Thieves* does show Gwyn getting dressed in her bedroom, this scene is completely different in both content and dramatic purpose from the opening scene in *sHerwood*. In *Princess of Thieves*, the scene is devoid of content and is used solely as a visual device to show the passage of time, by depicting Gwyn growing from a little girl to a young woman as she dresses. In *sHerwood*, on the other hand, the scene introduces Robyn's character, her rejection of a courtly lifestyle, and her quest for identity, through her actions and song lyrics.

Moreover, as demonstrated in the scene-by-scene chart attached to Defendants' Brief, the remaining scenes in the works do not follow the same sequence at all, except in the most general sense that both works contain scenes introducing the characters toward the beginning, conflicts for the characters in the middle (such as capture and chases), and battles and resolution at the conclusion. These generic scenes, and the isolated similarities listed in Plaintiff's Brief, obviously constitute non-copyrightable *scenes a faire*, which do not even occur in the same time sequence. In any event, there is virtually no overlap in individual scenes. Plaintiff conveniently ignores the multitude of scenes that are unique to each work – such as the scenes in *Princess of Thieves* focusing on Froderick, Conrad, Cardaggian, Philip and Friar Tuck – which prove that the works are unquestionably distinct.

It is for precisely this reason that courts view lists of supposed similarities such as plaintiff's as unreliable and *not probative* of substantial similarity. *See* cases cited in Defendants' Brief at 25-26, including *Warner Bros. Inc. v. American Broad. Cos., Inc.*, 654 F.2d 204, 209 (2d Cir. 1981) (similarities listed are general *scenes a faire* inherent to a story about a superhero,

e.g., performance of feats of miraculous strength, wearing tights, battling villains, flying with arms extended, being impervious to bullets, x-ray vision, and are insufficient to establish infringement).

It is inappropriate for a court to "simply focus on isolated elements of each work to the exclusion of other elements, combination of elements, and expressions therein." *Sid & Marty Krofft Television*, 562 F.2d at 1157. When considering the entire combination of elements and their expression, it is clear that the works are not substantially similar as a matter of law.

## III.    CONCLUSION

As demonstrated in Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings, *Princess of Thieves* and *sHerwood* reflect different stories, plots, themes, settings, times and moods. The pace, character development and characterizations of the work are substantially different. Moreover, the elements for which plaintiff claims copyright protection, such as ideas, concepts, characters, elements of the Robin Hood legend and *scenes a faire*, are not protectible by federal copyright law. Accordingly, defendants respectfully request that the Court enter an Order granting Defendants' Motion for Judgment on the Pleadings.

Respectfully submitted,

Dated: November 22, 2002

*Joyce A Meyers*

Joyce S. Meyers (I.D. No. 33037)
Michael D. Epstein (I.D. No. 62264)
Danielle M. White (I.D. No. 87772)

Montgomery, McCracken,
  Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

**Attorneys for Defendants**

-15-

## UNIVERSITY of PENNSYLVANIA

The Law School

3400 Chestnut Street
Philadelphia, PA 19104-6204
215-898-7413
email: rgorman@oyez.law.upenn.edu

Robert A. Gorman
*Kenneth W. Gemmill Professor of Law*

November 5, 2002

Joyce S. Meyers, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Dear Ms. Meyers:

You have asked me to assess the issue of "substantial similarity," for the purpose of determining copyright infringement, as between Brian A. Daley's musical play *sHerwood* (hereinafter *sHerwood)* and the defendants' made-for-television film *Princess of Thieves* (hereinafter *Princess*).

I respond to your inquiry on the basis of my 37 years of teaching Copyright at the University of Pennsylvania Law School and other law schools, my authorship of a Copyright casebook (now in its 6th edition) and a monograph on the subject published by the Federal Judicial Center, and my authorship of articles and speeches on the subject. In formulating this response, I have reviewed the complaint and answer of the parties, videotapes of both *sHerwood* and *Princess,* the written scripts of both works, and the "preliminary expert report" provided to the plaintiff's attorney by Bryan Scott.

In determining whether a work is "substantially similar" to, and therefore infringes, another, it is necessary to focus only on material that is protected by the copyright that is held by the earlier author. (I understand that *sHerwood* was written first and *Princess* thereafter.) Thus, although the copyright claimed by Mr. Daley in *sHerwood* covers his original music, lyrics and choreography (none of which is apparently claimed to have been infringed), his copyright does not protect against the use by others of elements in *sHerwood* that are in the public domain. Elements in the public domain are outside the intellectual property ownership of any person, and may freely be copied, embellished, dramatized and publicly performed by all persons, without securing the consent of or a license from the copyright claimant. Allowing such copying and use of public-domain materials is a core principle of copyright law, designed to promote the dissemination and development of knowledge, entertainment and culture.

1



Thus, elements of *sHerwood* that are in the public domain are not to be taken into account in making a determination of "substantial similarity." Examples of public domain elements are:

(a) Actual historical facts (e.g., that there was a King Richard of England in the 12th century);

(b) centuries-old myths or legends (e.g., Robin Hood and his Merry Men, stealing from the rich and giving to the poor);

(c) general literary "ideas" or "concepts" (see § 102(b) of the Copyright Act) as distinguished from the details of their "expression" (e.g., that a good-hearted outlaw preserves for an upright and entitled king the throne being claimed by an evil relative);

(d) so-called *scenes-a-faire*, or story elements that follow, almost of necessity, from plot ideas and settings (e.g., an attractive and vital young woman who, as part of "coming of age," falls in love);

(e) trite, simple or commonplace language (e.g., "we'll kill two birds with one stone"); and

(f) material that the first author has not originated but has copied from another (e.g., Robin Hood using swordplay to prevent King John from usurping the throne, already in motion pictures filmed decades ago).

It is my opinion that the overwhelming bulk, if not all, of the similarities that exist between *sHerwood* and *Princess* are of the sort just itemized, i.e., they are a part of the public domain and may freely be copied – even assuming, for the sake of this analysis, that there was access to, knowledge of, and copying from the Daley musical. Thus, any later author is fully entitled to duplicate a story containing elements such as: (i) Robin Hood's activities a generation after the period best remembered in the Errol Flynn motion picture; (ii) the evil Prince John seeking to displace the rightful claimant to the British Throne; (iii) the Sheriff of Nottingham pursuing (at Prince John's command) his fixation to eliminate Robin Hood; (iv) the introduction of Robin's teenage daughter who believes herself to be the equal of men in combat and loyalty, who dresses like a man, and who falls in love; (v) the capturing of Robin Hood by the forces of Evil and his release by the forces of Good (including his daughter); and (vi) swordplay here and there but particularly in the course of displacing Prince John and securing the Throne for the rightful ruler.

These are a mix of long-known legend, material presumably copied by Daley from earlier works, general "ideas" and "concepts," *scenes a faire*, and material otherwise not subject to copyright by Mr. Daley. The reason that no copyright may be claimed in these elements is so that today's authors may be allowed, indeed encouraged, to fashion variations on them in writing new works, with newly written story details and dialogue (and even music and dance). The very purpose of copyright, as noted above, is to assure that *there are no unreasonable restrictions upon authorship*, so that our fund of entertainment and culture may be enlarged and enriched -- and this is accomplished by allowing the use of public-domain "building blocks" in the creation of new works (such as the works of both Mr. Daley and the defendants).

2

In contrast to unprotectable "ideas" and "concepts," an author *may* claim copyright protection only for the so-called "expression" in which the ideas and concepts take specific dramatic form. In the context of literary and dramatic works, this applies to the details of the plot, or the detailed sequence of incidents in the story, that the author has originated. It may also, in the rarest of cases, apply to the individual characters of the copyrighted story, provided the characters are delineated in great detail.

As to the latter, I conclude that there is no character that has been originated by Mr. Daley and delineated in the necessary measure of detail to justify copyright protection. In any event, there is little or no overlap of characters and character development between *sHerwood* and *Princess*.

Of course, all of the Robin Hood contingent are drawn from the legend and from earlier works, and are a mere extrapolation into an elder age. Mr. Daley cannot claim copyright in such a public domain theme. In any event, the story treatment of those characters is vastly different in the two works. For example, Robin Hood is actually killed in the Daley musical (he also sings and dances), through witch-inflicted sleep dust, and is brought back to life through comparable fantastic magic, while the defendants' Robin Hood (very much alive throughout the television film) is imprisoned, tortured and ultimately freed by the Merry Men. The Sheriff of Nottingham is the principal villain in *Princess*, having frequent confrontations with Robin, his daughter Gwyn, and the true King-to-be (Philip), while he is almost totally absent from *sHerwood* after a handful of lines of dialogue within the first minutes of the Daley musical. (This spares us from seeing him sing and dance.) King Richard the Lionheart is never seen in *Princess*, since he is throughout the film off stage and identified as either dying or dead; while he is alive throughout the Daley musical, dancing with a trio of bedraggled prisoners in the first act and pompously claiming his throne at the climax in the second act. Similarly, Maid Marian is a prominent character throughout the Daley musical, singing and dancing and being reunited with Robin Hood at the end -- but is totally absent from *Princess*, having died before the central action of the film begins.

The "Junior" character (son of a Merry Man) originated by Mr. Daley is kind, decent, loves the heroine and engages in swordplay; but this is far too generalized and commonplace a young hero to be protected by copyright – and the Froderick character in the defendants' film interacts with the heroine, Gwyn, in a very different fashion (she consistently treats him as a "friend" and he is altogether secondary to the love interest she has in the king-to-be Philip). The heroine in both stories has some of the same attributes – confident of her equality with the men, a fine archer, eager to prove herself to her father, helpful in his escape, and in love with a young man. But here again, the details of the heroine and her interaction with the other key players are altogether different in the musical and the film: for example, Robyn in *sHerwood* is in love from the start with Junior, while Gwyn's interest in Froderick is only friendly and she is in fact in love with Prince Philip who is altogether absent from the Daley musical; Robyn interacts and sings with her mother

3

Marian, while Marian does not appear at all in *Princess*; and the circumstances of the heroine's rescue of her father are totally supernatural in the musical, and depicted in a natural and historical fashion in *Princess*.

A teen-age daughter of Robin Hood, seeking to be accepted as a grown-up and the equal of her male peers, is properly understood as a character "idea" which different authors are permitted to elaborate in their own varying ways – in the characters' behaviors, in their motivations, in their dialogue, in their relationships with other characters, and in the manner in which they carry forward the details of the plot. The "substantial similarity" test allows for these differing "expressions" of character "ideas," and I conclude that such is the case here, in the comparison of Robyn and Gwyn.

A claim of "substantial similarity" can be defeated, as implied above, not only by showing that elements that might have been copied are not protectable by a plaintiff's copyright, but also by showing significant differences in the overall setting and mood of the two works, as well as in their plot details.

As already noted, *sHerwood* is permeated by singing and dancing by almost all of the characters, by the "evil" principals as well as the "good" ones – Robin, Marian, daughter Robyn, Junior, Prince John, Margaret (the chief witch) and the Vixens – and there is a considerable amount of slapstick (e.g., by the starved and tortured prisoners!). *Princess*, on the other hand, is totally without such elements of music, dance and slapstick comedy. The bizarre and evil fairy-tale type of characters such as Margaret and the Vixens – who play predominant roles in establishing not only the mood of *sHerwood* but also in moving the story line forward (e.g., the killing of Robin Hood with sleep dust, and the bargain that Margaret makes with Prince John to swap the Throne for him with eternal youth and power for her) – are totally absent from *Princess*, which is presented in a quasi-historical framework. Conversely, the key plot elements in *Princess* – Richard is dying or dead, his son Philip is in disguise seeking to claim the British throne, and he and Robin Hood's daughter fall very much in love, with her giving him up as he ascends the throne – are altogether lacking in the Daley musical.

It is noteworthy that the written opinion provided on behalf of the plaintiff by Mr. Bryan Scott, a television writer and producer, aside from being altogether conclusory (without a single mention of a single precise similarity of plot, incidents or character), opines that "there is no doubt in my mind that the original concepts, which are under protection by copyright law, have been copied." Quite apart from the question whether one or the other party actually engaged in copying, it is noteworthy that Mr. Scott characterizes the copied material as merely "concepts" – elements which are explicitly excluded by § 102(b) of the Copyright Act from copyright protection, whether or not Mr. Scott may believe otherwise.

4

Similarly, the complaint in paragraph 19 identifies five "main themes" as identical in the two works. Review of these items shows them, indeed, to be merely "themes" – ideas or concepts, in copyright parlance – and thus unprotectable.

Paragraph 20 identifies a greater number of "plot lines" that are "virtually identical" in both works. Many of these have already been treated, explicitly or impliedly, in my comments above. Beyond that, many are redundant of one another, and others are quite exaggerated (e.g., Prince John is said to plot "with an evil female character," but in *Princess*, this apparently refers to a woman accompanying king-to-be Philip on a coach ride in France, and she is the most minor of characters who is on screen for perhaps 30 seconds, in contrast to the bizarre and central character of Margaret in *sHerwood*).

The references to similar "characters and dialogue" in paragraph 21 of the complaint are also largely redundant, generic or *scenes a faire*, and problematic in other important respects. For example, the plaintiff cannot claim copyright in such phrases as "father's daughter," "loose[sic] heart," "I wonder where she learned that?," and "killing two birds with one stone". Another alleged example is "splitting an arrow" in a competition; although such a scene would in any event be a perfect example of a *scene a faire* in a bow-and-arrow epic, it must be pointed out that, in the bow-and-arrow competitions in both the musical play and the film, there is in fact no "splitting" by Robyn in the musical, which leaves only the heroine winning a marksmanship competition in both works, which surely is too general and commonplace to be protected by copyright.

In sum, any similarity between the two works derives -- assuming that Mr. Daley authored these elements -- from the generic "idea" or "concept" of Robin Hood's teenage daughter coming of age, finding (and in *Princess*, losing) love, and through her rescue of her father winning the respect of her male peers and elders. On the basis of my understanding of many court decisions, and much academic writing, it is my confident opinion that this cannot constitute "substantial similarity" with respect to copyrightable elements, upon which a finding of infringement can be based.

Sincerely yours,

*Robert A. Gorman*

5

 **Copyright Search**

Registered Works Database (Title Search)
**Search For:** SON OF ROBIN HOOD
Items 1 - 2 of 2

| Conduct Another Search | or | Go to Copyright Homepage |

---

| | |
|---|---|
| **1. Registration Number:** | RE-290-600 |
| **Title:** | Son of Robin Hood. |
| **Claimant:** | acTwentieth Century Fox Film Corporation (PWH) |
| **Effective Registration Date:** | 20Mar86 |
| **Original Registration Date:** | 26Jun59 (in notice: 1958); |
| **Original Registration** | LP14321. |
| **Original Class:** | L |

---

| | |
|---|---|
| **2. Registration Number:** | RE-325-152 |
| **Title:** | The Son of Robin Hood. w & m aRoy C. Bennett & aSid Tepper. |
| **Claimant:** | acTwentieth Century Music Corporation (PWH) |
| **Effective Registration Date:** | 20Jan87 |
| **Original Registration Date:** | 14Apr59; |
| **Original Registration** | EU573091. |
| **Original Class:** | E |

**EXHIBIT**

Exhibit B

**Exhibit C is a copy of a videotape
of *Son of Robin Hood*, which is contained
in an envelope filed with this reply brief**



**EXHIBIT**

Exhibit C

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, a true and correct copy of Defendants' Reply Brief in

Support of Motion for Judgment on the Pleadings and the supporting exhibits were served, via

first class mail, postage pre-paid, upon plaintiff addressed as follows:

> Gavin P. Lentz, Esquire
> Bochetto & Lentz, P.C.
> 1524 Locust Street
> Philadelphia, PA 19102

Dated:  November 22, 2002

Joyce S. Meyers